UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:21-cr-736-4 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| CHEZERAE D. FLOYD, | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on the motion of defendant Chezerae Floyd ("Floyd") for pretrial release. (Doc. No. 145.) Plaintiff United States of America (the "government") opposes the motion (Doc. No. 150), and Floyd has filed a reply. (Doc. No. 151.) While Floyd requests a hearing, the Court finds that the present motion may be resolved on the record and the parties' written submissions.[1] To the extent that Floyd seeks from this Court a *de novo* review of the magistrate judge's February 16, 2022 detention order, the Court has reviewed the following:

(1) the superseding indictment (Doc. No. 34);

(2) the pretrial services report (Doc. No. 79, sealed);

(3) the magistrate judge's order of detention (Doc. No. 84);

(4) the transcript from the detention hearing (Doc. No. 124); and

(5) the parties' briefing (Doc. Nos. 145, 150, 151).

---

[1] As will be discussed below in more detail, the present motion appears to be nothing more than an attempt by Floyd to have a second bite of the apple with new counsel. Floyd is not entitled to reopen the detention hearing to present evidence that he could have, but did not, present at the initial hearing.

I. **BACKGROUND**

On October 14, 2021, an indictment issued charging defendant Damien Roger Marcel Stafford and two other individuals with conspiracy to possess with intent to distribute fentanyl and multiple counts of possession with intent to distribute fentanyl. (Doc. No. 13.) On February 2, 2022, a superseding indictment issued expanding the scope of the drug conspiracy by charging additional controlled substances and drug and weapons-related offenses, and by identifying ten additional drug conspirators. (Doc. No. 34.) Floyd was one of the individuals charged for the first time in the superseding indictment.

At Floyd's arraignment on February 10, 2022, the government moved for detention pending trial. CJA Attorney Noah C. Munyer was appointed to represent Floyd. (Minutes of Proceedings, 2/10/2022; CJA Appointment of Attorney Noah C. Munyer, 2/10/2022.) At the conclusion of the arraignment, Floyd was remanded to the custody of the U.S. Marshals and a detention hearing was set. (Minutes of Proceedings, 2/10/2022; Doc. No. 50 (Order).)

On February 15, 2022, Magistrate Judge William H. Baughman, Jr. conducted the detention hearing where Floyd was, again, represented by Attorney Munyer. (Minutes of Proceedings, 2/15/2022.) At the hearing, the government proffered from the pretrial services report that Floyd had a criminal history that included a 2011 conviction for domestic violence, three probation violations, and a capias that issued for his failure to appear in court. The government also proffered as to the pending charges against Floyd and his alleged involvement in coordinating the distribution of substantial quantities of controlled substances, particularly fentanyl. Further, government's counsel noted that Floyd had not been completely truthful with pretrial services, reciting information demonstrating that Floyd did not report an accurate address

2

for his current residence and had lied about the fact that he had never traveled outside the United States.[2] (Doc. No. 124 at 3[3]–6; *see* Doc. No. 79 at 1.) Defense counsel also relied on the pretrial services report, highlighting Floyd's lifetime residence in Ohio, his employment, and an eight-year gap between his last criminal conviction and the present charges. (Doc. No. 124 at 7.) Finally, defense counsel noted that Floyd's name was only mentioned "two or three times" in the 43-page indictment. (*Id*. at 10.)

In ordering Floyd detained pending trial, the magistrate judge determined that a rebuttable presumption arises under 18 U.S.C. § 3142(e)(3) in favor of detention because Floyd was charged with an offense for which a maximum term of imprisonment of 10 years or more is prescribed under the Controlled Substances Act. (Doc. No. 84 at 2.) Further, while the magistrate judge found that Floyd had presented sufficient evidence to rebut the presumption, he also determined that the government had demonstrated by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community. (*Id*.) Additionally, the magistrate judge found, by a preponderance of the evidence, that no condition or combination of conditions of release will reasonably assure Floyd's appearance in this matter. (*Id*.)

In reaching these conclusions, the magistrate judge relied on the following: a finding that

---

[2] As to the former, Floyd reported to pretrial services that his residence was located at 458 Moreley Avenue in Akron, Ohio where he had resided with his mother for more than twenty years. (Doc. No. 79 at 1.) At the hearing, the government's attorney explained that, despite extensive surveillance of this address, Floyd was never found to be staying there. (Doc. No. 124 at 4.) Instead, he was often found to reside at a Crestview Avenue address in Akron where he was ultimately arrested. (*Id*.) As to the latter, while Floyd reported to pretrial services that he did not possess a passport and had never traveled outside the United States (*see* Doc. No. 79 at 1), the government's attorney represented that information gained in the investigation revealed evidence that, in March 2021, Floyd traveled to Mexico. (Doc. No. 124 at 4–5.)

[3] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

3

the weight of evidence against Floyd was strong, the fact that he was facing a lengthy period of incarceration if convicted, his prior criminal history, his participation in criminal activity while on supervised release, his history of violence and/or use of weapons, his history of alcohol or substance abuse, his lack of a stable residence, his prior failure to appear in court as ordered, and his prior supervised release violations. (*Id.* at 2–3; *see generally* Doc. No. 79.) The magistrate judge offered this further explanation:

> Defendant Chezerae D. Floyd's counsel presented evidence sufficient to rebut the presumption in this case. Furthermore, he correctly points out that 18 U.S.C. Sec. 3142(c)(1)(B) calls for "the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required or the safety of any other person and the community." I don't need to reach that provision here, however, because the government has met its burden of showing that no condition or combination of conditions will reasonable assure the safety of any other person and the community. 18 U.S.C. Sec. 3142(f) and (g). The government also has met its burden in showing that Floyd presents a serious flight risk. Id. Defense counsel presented no evidence to rebut the government's proffer of evidence that Floyd traveled to Mexico, even though he represented to the United States Pretrial Services and Probation Office that he does not hold a passport and never traveled outside the United States. The government also presented evidence that called into question whether Floyd was honest in reporting to the pretrial officer where he was residing prior to his arrest. This evidence, together with the nature of the overall criminal enterprise and the allegations in the indictment specifically implicating Floyd, amply shows Floyd to be a flight risk—as well as a danger to the community. No condition or combination of conditions will reasonably assure Floyd's appearance as required or assure the safety of others and the community.

(*Id.* at 3.)

On March 22, 2022, Attorney J. Reid Yoder replaced Attorney Munyer as counsel of record for Floyd. On May 25, 2022, new counsel filed the present motion requesting that the Court grant Floyd pretrial release, "or in the alternative grant a Detention Hearing as the Defendant has had a change in circumstances[.]" (Doc. No. 145 at 1.)

4

### II. DISCUSSION

It is unclear from the filing whether Floyd is seeking review and revocation of the magistrate judge's order of detention, pursuant to 18 U.S.C. § 3145(b), or is requesting that the detention hearing be reopened under 18 U.S.C. § 3142(f). Section 3145(b) permits a defendant to seek review of a pretrial detention order of a magistrate judge. When the district court "acts on a motion to revoke or amend a magistrate judge's pretrial detention order, [it] acts *de novo* and must make an independent determination of the proper pretrial detention or conditions of release." *United States v. Reuben*, 974 F.2d 580, 585 (5th Cir. 1992) (citation omitted). Section 3142(f) permits the reopening of the detention hearing upon new and material information. 18 U.S.C. § 3142(f). While motions to revoke under § 3145(b) are filed with the district court, motions to reopen are typically directed to the same judicial officer who conducted the initial hearing. *See United States v. Cisneros*, 328 F.3d 610, 614 (10th Cir. 2003). In this case, the magistrate judge would be the appropriate judicial officer; yet the motion was directed to the undersigned. However, given the fact that the Court has the discretion under § 3145(a)(1) to hear additional evidence as part of its *de novo* review, the Court finds that it would be appropriate and expeditious for this judicial officer to address Floyd's right to pretrial release under both statutes. *See, e.g., United States Baker*, No. 6:21-cr-32, 2021 WL 2744512, at *4 (E.D. Ky. July 1, 2021).

 A. **18 U.S.C. § 3142(f)**

A judicial officer may reopen a detention hearing:

> at any time before trial if a judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f). New and material information for purposes of § 3142(f) "consists of something other than a defendant's own evaluation of his character or the strength of the case against him; truly changed circumstances, something unexpected, or a significant event." *United States v. Jerdine*, No. 1:08-cr-481, 2009 WL 4906564, at *3 (N.D. Ohio Dec. 18, 2009) (citation omitted). The statutory provision authorizing the reopening of a detention hearing is strictly interpreted such that "hearings should not be reopened if the evidence proffered was available at the time of the hearing." *Id.* Additionally, the newly proffered information "must be of a nature that would increase the likelihood that the defendant will appear at trial and would show that the defendant is less likely to pose a danger to the community." *United States v. Watson*, 475 F. App'x 598, 600 (6th Cir. Apr. 13, 2012) (citing § 3142(f)(2)(B)).

In his motion, Floyd argues that, at the hearing, he was "required to rely" on the report of pretrial services and "the facts that were provided to him" by the government." (Doc. No. 145 at 2.) He alleges that he "did not have the opportunity to present or call witnesses to support his contention that he resided at Crestview Avenue."[4] (*Id.*) He also complains that "there were no witnesses to support the contention" that he used the Crestview Avenue residence as his mailing address and place of residence for twenty years. (*Id.*) According to Floyd, he simply "did not understand that he had the right to call and present witness[es] to rebut the [g]overnment's assertions." (*Id.* at 4.)

Floyd posits that, had he been given the opportunity, he would have offered witness testimony to demonstrate that he resided at 1303 Crestview Avenue, or with his girlfriend at 490

---

[4] In his reply, Floyd goes so far as to insist that "Mr. Floyd was not permitted to call any witnesses[,] . . . and that he was not permitted to speak." (Doc. No. 151 at 1.)

6

Saint Ledger Street, but that the Moreley street address is his childhood home and his permanent residence. (*Id*. at 2–3, Doc. No. 151 at 2.) He would also have offered evidence that he does not have a passport and that he had legitimate reasons for traveling to Mexico. Additionally, he notes that, now that his current counsel has reviewed the discovery relating to the T3 wiretap communications, he would have offered evidence showing that he was not mentioned therein and was not involved in drug trafficking with any co-defendants. (Doc. No. 145 at 3; Doc. No. 151 at 3.) Finally, he would have offered evidence that he had legitimate reasons for traveling to South Carolina that were unrelated to drug trafficking. (Doc. No. 151 at 4.)

As an initial matter, the record from the detention hearing belies Floyd's unsubstantiated representations that he was not permitted to offer witness testimony or evidence to rebut the government's motion. Indeed, from the transcript it is clear that the magistrate judge anticipated that both sides might provide such evidence or call live witnesses to testify. (Doc. No. 124 at 3 ["Counsel will initially state for the record the evidence that they intend to rely on in support and in opposition of the motion to detain, and then we will go on to argument."].) Moreover, even if Floyd did not possess an independent understanding that he could present evidence, he was represented at the hearing by experienced CJA counsel who is well versed in the rights and obligations of parties in such proceedings. Accordingly, the Court rejects Floyd's contentions that he was precluded from rebutting the government's evidence.

Next, the Court finds that most of the evidence he now seeks to offer—including his addresses and where he resides, and his domestic and international travel and his reasons for traveling—were all known to Floyd at the time of the hearing and do not provide a basis for reopening the hearing. *See United States v. Ramadan*, No. 20-1450, 2020 WL 5758015, at *1

(6th Cir. Sept. 22, 2020) ("To reopen a proceeding, a defendant must first establish that the information was not previously known to him."); *Jerdine*, 2009 WL 4906564, at *3 (similar). Moreover, this information also does nothing to dispel the reasons given by the magistrate judge for finding that he was a flight risk, as Floyd's newly proffered evidence only confirms that he lied to pretrial services about where he lived and whether he had traveled outside the country.

While the T3 wiretap communications produced in discovery might qualify as new information, it also does not provide a basis for reopening the detention hearing. At the hearing, the magistrate judge considered defense counsel's argument relating to the strength of the evidence against him based on the fact that Floyd was only mentioned a few times in the indictment. Evidence that the wiretaps likewise did not contain repeated references to Floyd would have been cumulative and would not have dispelled the government's proffer relative to the information it gained through surveillance of Floyd and his alleged efforts to coordinate and direct others to distribute controlled substances.[5]

Moreover, the strength of the case against Floyd was only one of the ten specific fact-findings upon which the magistrate judge relied in concluding that Floyd had not rebutted the presumption in favor of detention. Floyd does not address the majority of the other findings, including his own criminal history, prior probation violations, and failure to appear in court. Floyd's cumulative evidence would not have made a material difference in the magistrate judge's final analysis. Floyd has failed to demonstrate a basis for reopening the detention hearing.

---

[5] Indeed, the fact that Floyd's name may not have been mentioned by name in the wiretaps would not have discredited the government's evidence, as the government indicated that it had evidence that Floyd often went by the nickname "Player," who was mentioned in the wiretaps, and that several of the communications came from a cell phone known to be owned by Floyd. (Doc. No. 150 at 5.)

### B. 18 U.S.C. § 3145(b)

In any event, having conducted its *de novo* review, the Court independently finds that the government met its burdens of proof and established that Floyd is both a flight risk and a risk of danger to others and the community. His prior failure to appear in court and his dishonesty with pretrial services leave the Court with grave concerns regarding the likelihood that Floyd would appear in court as ordered in this case. Further, his prior domestic violence and weapons convictions, along with his willingness to continue to engage in criminal behavior on supervised release, demonstrate that he is a danger to others and to the community. Additionally, the nature of the charged drug trafficking organization, and allegations in the indictment implicating Floyd (as well as the government's proffered evidence of Floyd's alleged involvement in bringing large quantities of fentanyl, a dangerous drug, to the Akron area), serve to only reinforce a finding that Floyd's release posses a danger to the community and to others. *See United States v. Stone*, 608 F.3d 939 n.6 (6th Cir. 2010) ("[D]rug trafficking is a serious offense that, in itself, poses a danger to the community.") (citing and quoting, among authority, *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989) ("[t]he risk of continued narcotic trafficking on bail constitutes a risk to the community")).

### III. CONCLUSION

For the foregoing reasons, as well as the reasons set forth in the government's response, the Court finds that the government has demonstrated by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and community. The Court also finds that the government has demonstrated by a preponderance of the evidence that no condition or combination of conditions of release will

reasonably assure Floyd's appearance as required. Accordingly, Floyd's motion to revoke the detention order and/or reopen the detention hearing is DENIED.

**IT IS SO ORDERED**.

Dated: July 18, 2022

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**