# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:21-cr-736 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| DAMIEN ROGER MARCEL STAFFORD, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

On February 2, 2022, a superseding indictment issued charging thirteen individuals with participation in a conspiracy to commit various drug trafficking and related offenses. (Doc. No. 34.) In May 2022, each defendant moved to declare the case complex, citing, among other reasons, the voluminous nature of the discovery the government had already provided defendants. (Doc. Nos. 135–39, 141–44, 146; *see, e.g.*, Doc. No. 135, at 1[1].) The Court granted the unopposed motions of all defendants, finding the case "unusual and complex due to the number of defendants, the type and volume of discovery, and the nature of the prosecution[.]" (Doc. No. 160 (Ends of Justice Order), at 1–2.) Since that initial ruling, three defendants have entered guilty pleas and been sentenced. (Doc. No. 231 (Alexander Prieto Judgment); Doc. No. 246 (Antwain Stewart Amended Judgment); Doc. No. 250 (Lucian Blackwell Judgment).) For the remaining defendants, a jury trial is currently set for June 12, 2023. (Doc. No. 234 (Amended Trial Order).)

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic docketing system.

Now before the Court are two pretrial motions: (1) the motion of defendant Chezerae D. Floyd ("Floyd") to sever (Doc. No. 147 (Motion to Sever)); and (2) the motion of defendant Jessica McClanahan ("McClanahan") for early disclosure of Jencks material and timely disclosure of *Brady/Giglio* material.[2] (Doc. No. 177 (Discovery Motion).) The government has filed a response to Floyd's severance motion. (Doc. No. 253 (Response to Motion to Sever).) For the reasons that follow, both motions are **DENIED**.

**I.    Discovery Motion (Doc. No. 177)**

In her discovery motion, McClanahan "respectfully requests that the government provide her with any exculpatory material[,]" and with any evidence that "might bear unfavorably upon the credibility of any witness expected to be called by the government at trial." (Doc. No. 177, at 3.) She also requests that the Court "order early disclosure of Jencks material." (*Id.* (emphasis omitted).) She insists that timely disclosure of materials pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972), is necessary to permit adequate trial preparation and ensure effective cross-examination of government witnesses. (*Id.* at 3–4.) Likewise, she maintains that Jencks Act material should be provided early "so as to furnish [her] with sufficient time to examine and utilize this material in a meaningful manner before and during trial." (*Id.* at 2.)

Under Rule 26.2, which incorporates the Jencks Act in the Federal Rules of Criminal Procedure, after a witness has testified on direct examination, the government or the defendant may discover the witness' pretrial statements if the statements are in the possession of the party

---

[2] The government failed to file a response to the discovery motion, and the time for responding has passed. (*See* Doc. No. 234.)

2

calling the witness and relate to the subject matter of the witness' testimony. *See also* 18 U.S.C. § 3500. While it is true that early disclosure of Jencks material "avoids the inevitable delay of the trial when the material is withheld until the witness concludes his direct examination[,]" *United States v. Minksy*, 963 F.2d 870, 876 (6th Cir. 1992), the government has the right under the Jencks Act to withhold such material until the witness has testified on direct. *See id.; United States v. Brazil*, 395 F. App'x 205, 215 (6th Cir. 2010); 18 U.S.C. § 3500(b); *see also United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988) ("The clear and consistent rule of this circuit is that the intent of Congress expressed in the Act must be adhered to and, thus, the government may not be compelled to disclose Jencks Act material before trial." (citations omitted)). As for *Brady,* the government is only required to provide exculpatory and impeachment evidence in time for effective use at trial. *See United States v. Crayton*, 357 F.3d 560, 569 (6th Cir. 2004) (citation omitted). Further, "[w]hen *Brady* material sought by a defendant is covered by the Jencks Act . . . the terms of that Act govern the timing of the government's disclosure." *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002) (quotation marks and citation omitted).

With respect to *Brady* and *Giglio* evidence, McClanahan's motion is nothing more than a boilerplate request that the government honor its discovery obligations. It is clear from the record that all remaining defendants have already received substantial discovery, some of which defendants have had in their possession for more than a year. McClanahan has not suggested that the government has failed to honor *any* discovery obligations to date, and the Court trusts that the government will continue to supplement its discovery to defendants as required under the law. As for her request for the disclosure of early Jencks Act material, as previously noted, the Court is without authority to compel such early disclosure. For these reasons, McClanahan's discovery

motion is **DENIED**. Nevertheless, the government is encouraged to provide all required discovery materials as early as possible so as to avoid any unnecessary delays at trial.

II. **Severance Motion (Doc. No. 147)**

Defendant Floyd seeks a permissive severance from his co-defendants under Fed. R. Crim. P. 14. Floyd maintains that he "strongly believes this Court should sever the other [remaining c]o-defendants' cases because there is a serious risk that a joint trial will prevent a [j]ury from making a reliable judgment about Mr. Floyd's involvement." (Doc. No. 147, at 3.)

Federal Rule of Criminal Procedure 8(b) permits "joinder in an indictment of defendants 'alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.'" *United States v. Swift*, 809 F.2d 320, 322 (6th Cir. 1987) (quoting Fed. R. Crim. P. 8(b)). This rule is to be "broadly construed in favor of initial joinder[.]" *Id*. (quotation marks and citation omitted). "A group of acts or transactions is logically interrelated, for instance, if the acts or transactions are part of a common scheme or plan." *United States v. Johnson*, 763 F.2d 773, 776 (6th Cir. 1985). When defendants are joined for participating in the same series of actions, such as in a conspiracy, the defendants may be charged in one or more counts and all defendants need not be charged in each count. *See United States v. Warner*, 690 F.2d 545, 551 (6th Cir. 1982) ("It is well settled that joinder is proper under Rule 8(b) where an indictment charges multiple defendants with participation in a single conspiracy." (quotation marks and citation omitted)).

"As a general rule, persons jointly indicted should be tried together because 'there is almost always common evidence against the joined defendants that allows for the economy of a single trial.'" *United States v. Lopez*, 309 F.3d 966, 971 (6th Cir. 2002) (quoting *United States v. Phibbs*,

4

999 F.2d 1053, 1067 (6th Cir. 1993)); *see Gardiner*, 463 F.3d at 472. "Once defendants have been properly joined under Federal Rule of Criminal Procedure 8(b), a 'strong showing of prejudice' is required to justify severance." *United States v. Hessling*, 845 F.2d 617, 619 (6th Cir. 1988) (quoting *United States v. Reed*, 647 F.2d 678, 689 (6th Cir. 1981)); *see also United States v. Scaife*, 749 F.2d 338, 344 (6th Cir. 1984) (showing of prejudice must be made demonstrating that the jury will be unable to separate and treat distinctively evidence that is relevant to each particular defendant on trial). Severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539, 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993). "Even where the risk of prejudice is high, 'less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.'" *United States v. Driver*, 535 F.3d 424, 427 (6th Cir. 2008) (quoting *Zafiro*, 506 U.S. at 593).

Moreover, "[t]he fact that defendant may have a better chance at acquittal if his trial were severed does not require the judge to grant his motion [to sever]: the defendant must show 'substantial,' 'undue' or 'compelling prejudice.'" *United States v. DeFranco*, 30 F.3d 664, 669–70 (6th Cir. 1994) (quoting *Warner*, 971 F.2d 1195); *see Stanford v. Parker*, 266 F.3d 442, 458 (6th Cir. 2001). Nor does he have a right to a severance merely because his defense is antagonistic to that of his co-defendants. *Zafiro*, 506 U.S. at 538; *Stanford*, 266 F.3d at 458. Likewise, a spillover of evidence from one defendant to another generally does not require severance. *Anderson*, 89 F.3d at 1312; *see Lopez*, 309 F.3d at 971. In fact, "a defendant is not entitled to severance simply because the evidence against a codefendant is far more damaging than the evidence against him." *United States v. Causey*, 834 F.2d 1277, 1288 (6th Cir. 1987); *see Driver*,

5

535 F.3d at 427.

As an initial matter, Floyd posits that permissive severance is warranted because Title III wiretaps will "inevitably be played by the [g]overnment's counsel" at trial. (Doc. No. 147, at 3.) He complains that this would be unduly prejudicial because none of the recorded conversations include him and "he is not involved in any of those [drug] transactions." (*Id*.) The government insists that Floyd's argument misrepresents the evidence, as the Title III wiretaps did intercept calls to which Floyd was a party. Significantly, included in the wiretaps involving Floyd are conversations between Floyd and co-defendant Damien Roger Marcel Stafford ("Stafford") during a September 2021 trip to South Carolina.[3] It is the government's contention that it was during this trip that Floyd and two co-defendants transported the bulk of the drugs from South Carolina to the locations where they were eventually discovered by agents. (Doc. No. 253, at 5.)

In addition to the September 21, 2021, trip to South Carolina, Floyd's charged conduct included a July 12, 2021, incident in which Floyd and co-defendants Stafford and Craig Johnstone are alleged to have participated in providing fentanyl, cocaine, and methamphetamine to co-defendants Travis Blankenship and McClanahan in a resident in Akron, Ohio for transport to West Virginia. (Doc. No. 253, at 4 (citing superseding indictment).) Because "[a]lmost all of the remaining defendants in this case . . . played a role in one or both of those incidents[,] . . . much of the trial evidence related to the conspiracy will focus on the two incidents in which [Floyd] is alleged to have participated." (*Id*. at 4–5.) As a result, the jury would still hear wiretap conversations and other evidence involving Floyd and his alleged involvement in various drug transactions in a separate trial.

---

[3] In fact, one such call involving Floyd is included in the superseding indictment. (*See* Doc. No. 34 ¶ 5(jjj).)

Additionally, Floyd has failed to demonstrate how less drastic measures, such as limiting instructions, would not be sufficient to cure any possible spillover prejudice. *See, e.g., United States v. Fernandez*, 559 F.3d 303, 317 (5th Cir. 2009) (limiting instruction that each charge against each defendant was to be considered separately was sufficient to cure any possible prejudice from joint trial); *see also United States v. Horton*, 847 F.2d 313, 317 (6th Cir. 1988) ("There is a strong policy in favor of joint trials when charges will be proved by the same series of acts . . . and there is a presumption that the jury will be able to sort out the evidence applicable to each defendant and render its verdict accordingly." (internal citations omitted)).

Floyd also raises a concern that his various co-defendants may offer defenses that are antagonistic to his own and argues that a severance "would avoid potential irreconcilable conflicts" and preserve Floyd's "constitutional and statutory rights." (Doc. No. 147, at 3.) "Antagonistic defenses arise when one person's claim of innocence is predicated solely on the guilt of a co-defendant." *United States v. Harris*, 9 F.3d 493, 501 (6th Cir. 1993). The standard for severing based on potentially antagonistic defenses is "very high[.]" *United States v. Norwood*, 50 F. Supp. 3d 810, 827 (E.D. Mich. 2014). As the district court in *Norwood* observed:

> Hostility among defendants or the attempt of one defendant to save himself by inculpating another does not require that defendants be tried separately. Neither does a difference in trial strategies mandate separate trials. The burden is on defendants to show that an antagonistic defense would present a conflict so prejudicial that defenses are irreconcilable, and the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.

*Norwood*, 50 F. Supp. 3d at 827 (quoting *Warner*, 971 F.2d at 1196). "In other words, 'mutually antagonistic defenses are not prejudicial *per se*,' and Fed. R. Crim. P. 14 does not require severance even if some prejudice is shown." *Id*. (quoting *United States v. Carpenter*, No. 12-20218, 2014 WL 943094, at *2 (E.D. Mich. Mar. 11, 2014) (further quotation marks and citation omitted)); *see*

7

*Zafiro*, 506 U.S. at 539. "The 'mere fact that each defendant points the finger at his co-defendant is insufficient.'" *United States v. Fields*, 763 F.3d 443, 457 (6th Cir. 2014) (quoting *Warner*, 971 F.2d at 1196); *see United States v. Dhaliwal*, 464 F. App'x 498, 510 (6th Cir. 2012) ("[T]he attempt of one defendant to save himself by inculpating another defendant does not require that the defendants be tried separately.") Instead, a defendant must show that the evidence at trial would be so confusing that "a jury could [not] reasonably be expected to sort out the evidence[.]" *United States v. Crotinger*, 928 F.2d 203, 206 (6th Cir. 1991).

Floyd fails to even identify what possible antagonistic defenses might be offered at trial, let alone demonstrate how any such arguably antagonistic defenses might confuse or mislead the jury, as required to obtain a severance. There is simply no reason to believe that a jury, properly instructed, would be unable to sort out the evidence applicable to each defendant. *See, e.g., id.*, 928 F.2d at 206 (finding that "a jury could reasonably be expected to sort out the evidence applicable to whether [the passenger], [the driver], or someone else owned the suitcases containing the marijuana").

Given the obvious conveniences and economies to be gained from trying this complex conspiracy in one proceeding, and the lack of any reason to believe that a curative instruction will not be sufficient to protect against any spillover prejudice, the Court declines to exercise its discretion under Rule 14 to sever Floyd from his remaining co-defendants. *See, e.g., United States v. Fernandez*, 559 F.3d 303, 317 (5th Cir. 2009) (limiting instruction that each charge against each defendant was to be considered separately was sufficient to cure any possible prejudice from joint trial). The motion for severance is **DENIED**.

### III.  CONCLUSION

For the forgoing reasons, Floyd's motion to sever (Doc. No. 147) and McClanahan's discovery motion (Doc. No. 177) are **DENIED**.

**IT IS SO ORDERED**.

Dated: March 29, 2023

                                                **HONORABLE SARA LIOI**
                                                **UNITED STATES DISTRICT JUDGE**